**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 3:20-CR-00009-CAR-CHW** |
| | : | |
| **VICTOR GARCIA** | : | |
| _____ | : | |

**UNITED STATES' RESPONSE IN OPPOSITION
TO VICTOR GARCIA'S SUPPLEMENTAL BRIEF**

COMES NOW the United States of America, by and through its attorney, the Acting United States Attorney for the Middle District of Georgia, and files this response in opposition to Defendant Victor Garcia's supplemental brief.  Doc. 95.  The United States maintains that Garcia's 2004 North Carolina conviction for "Trafficking Cocaine by Possession" qualifies as a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.2.  Thus, the United States respectfully requests that the Court overrule Garcia's objection to the presentence report ("PSR") and designate Garcia as a career offender under U.S.S.G. § 4B1.1.

In 2004, Garcia was convicted in North Carolina for Trafficking Cocaine by Possession under N.C. Gen. Stat. § 90-95(h)(3).  PSR, Doc. 92 ¶¶ 48-49.  The North Carolina statute under which Garcia was convicted defines as trafficking in cocaine if a person:

> sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine and any salt, isomer, salts of isomers, compound, derivative, or preparation thereof, or any coca leaves and any salt, isomer, salts of isomers, compound, derivative, or preparation of coca leaves, and any salt, isomer, salts of isomers, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances (except decocainized coca leaves or any extraction of coca leaves which does not contain cocaine) or any mixture containing such substances.

N.C. Gen. Stat. § 90-95(h)(3) (2004).  This trafficking offense is separate and distinct from the offenses of simple possession and possession with intent to distribute.  *See* N.C. Gen. Stat. § 90-95(a).

A person convicted of cocaine trafficking faces harsher penalties than does a person convicted of simple possession or possession with intent to distribute.  *See* N.C. Gen. Stat.§§ 90-95(a), (h); *see State v. Tyndall*, 284 S.E.2d 575, 577 (N.C. Ct. App. 1981) (noting that "[t]he penalties for [drug trafficking] are harsher than those under G.S. 90–95(a)(1)," which punishes possession with intent to distribute).  Specifically, the cocaine trafficking statute provides increasing penalties for three distinct categories of drug quantities: (1) more than 28 grams but less than 200 grams of prohibited substances; (2) more than 200 grams but less than 400 grams of prohibited substances; and (3)  400 grams or more of prohibited substances.  N.C. Gen. Stat. § 90-95(h)(3) (2004).  Garcia possessed more than 200 grams but less than 400 grams of cocaine, which subjected him "a minimum term of 70 months and a maximum term of 84 months in the State's prison and [a fine of] not less than one hundred thousand dollars ($100,000)."  *Id.*; Doc. 92 ¶ 49.

Probation determined that Garcia's conviction under N.C. Gen. Stat. § 90-95(h)(3) qualified as a "controlled substance offense" under U.S.S.G. § 4B1.2.  Doc. 92-1.  The Sentencing Guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Garcia objected to this classification, arguing that the North Carolina cocaine trafficking offense is categorically broader than a controlled substance offense as defined under the

Guidelines.  In support, Garcia asserts that the North Carolina cocaine trafficking statute is substantially similar to the Florida drug trafficking statute, does not include the element of intent, and defines cocaine more broadly than do federal statutes.  Doc. 95.  Because those reasons either are squarely foreclosed by binding precedent or lack merit, this Court should overrule Garcia's objection and designate him as a career offender under the Guidelines.

1. **North Carolina's trafficking in cocaine offense categorically qualifies as a "controlled substance offense" under the Guidelines**.

The North Carolina cocaine trafficking statute is substantially similar to the Georgia drug trafficking statute, which the Eleventh Circuit has held is a "drug trafficking offense" under U.S.S.G. § 2L1.2.  *United States v. Madera-Madera*, 333 F.3d 1228 (11th Cir. 2003).  "Although [the Eleventh Circuit] considered whether the defendant's prior conviction was a 'drug trafficking offense' rather than a 'controlled substance offense' in *Madera-Madera*," that precedent guides this Court's determination of whether the North Carolina cocaine trafficking offense constitutes a "controlled substance offense" under U.S.S.G. § 4B1.2 "because the Guidelines definition of 'drug trafficking offense' is virtually identical to its definition of 'controlled substance offense.'" *United States v. Wilson*, 166 F. App'x 420, 421 (11th Cir. 2006).

The Georgia drug trafficking statute, which the Eleventh Circuit examined in *Madera-Madera*, stated that "any person who sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine . . . shall be punished." 333 F.3d at 1231.  Similar to that statute, the North Carolina cocaine trafficking statute punishes "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine." N.C. Gen. Stat. § 90-95(h)(3) (2004).  Although the North Carolina trafficking statute prohibits manufacturing cocaine whereas the Georgia statute does not, that does not create a conflict with the Guidelines because the Guidelines definition of "controlled substance offense" includes "the

manufacture . . . of a controlled substance."  U.S.S.G. § 4B1.2(b).  With this exception, the Georgia and North Carolina trafficking statutes otherwise prohibit the same types of criminal conduct: selling, delivering, transporting, and possessing.

Georgia's and North Carolina's drug statutes are also similarly structured.  The "Georgia legislature has enacted a three-tiered scheme for punishing those persons involved with drugs." *Madera-Madera*, 333 F.3d at 1231.  Under this scheme, "drug trafficking . . . is a more serious offense than either simple possession or possession with intent to distribute."  *Id.* at 1231-32. Likewise, North Carolina's cocaine trafficking offense "is a more serious offense than either simple possession or possession with intent to distribute," as a person convicted of trafficking in cocaine faces harsher penalties than does a person convicted of simple possession or possession with intent to distribute.  *Id.*; *see* N.C. Gen. Stat.§§ 90-95(a), (h); *see Tyndall*, 284 S.E.2d at 577 (noting that "[t]he penalties for [trafficking in cocaine] are harsher than those under G.S. 90–95(a)(1)," which punishes possession with intent to distribute).  Thus, "under both the Georgia and [North Carolina] schemes, drug trafficking is a more serious offense, and is punished more harshly, than either simple possession or possession with intent to distribute."  *United States v. James,* 430 F.3d 1150, 1155 (11th Cir. 2005), *overruled on other grounds by Johnson v. United States,* 576 U.S. 591 (2015). Finally, "[i]n both [North Carolina] and Georgia, the defendant must be in possession of a significant quantity of drugs, namely 28 grams, before the state deems the offense to be 'trafficking.'"  *Id.* at 1154-55.

The substantially similar phrasing and structures of the Georgia and North Carolina trafficking statutes show that the North Carolina drug trafficking statute "is not materially distinguishable from Georgia's."  *Id.*  That means that the North Carolina crime of trafficking in cocaine categorically qualifies as a controlled substance offense because the Georgia crime of

trafficking in methamphetamine is a controlled substance crime under binding precedent. *See id.* (holding that because "Florida's three-tiered scheme for punishing drug crimes is not materially distinguishable from Georgia's, . . . our reasoning in *Madera–Madera* controls this case.").

To avoid this conclusion, Garcia argues that the North Carolina statute does not precisely match the Guidelines definition because the state statute covers the act of transportation whereas the definition does not. The element of "transportation" does not make the North Carolina cocaine trafficking offense fall outside the Guidelines definition for two reasons. First, the Georgia trafficking statute prohibits "bring[ing] into" Georgia a controlled substance, which is similar to "transporting" under the North Carolina trafficking statute. But the Eleventh Circuit has nonetheless concluded that the Georgia trafficking offense categorically qualifies as a controlled substance offense. *Wilson*, 166 F. App'x at 421; *Madera-Madera*, 333 F.3d at 1234. Second, the Eleventh Circuit held in an unpublished opinion that the Ohio drug trafficking crime, which included the element of "transportation," qualified as a "drug trafficking offense" under the Guidelines. The Ohio statute provided "(A) No person shall knowingly do any of the following: (2) Prepare for shipment, ship, *transport*, deliver, prepare for distribution, or distribute a controlled substance." *United States v. Walker*, 429 F. App'x 874, 876 (11th Cir. 2011) (emphasis added). The Eleventh Circuit held that a violation of this statute "categorically qualifies as a drug trafficking offense within the meaning of the Sentencing Guidelines." *Id.* Thus, even with the element of transportation, the North Carolina cocaine trafficking offense qualifies as a controlled substance offense under the Guidelines.

Garcia's argument further ignores the Eleventh Circuit's recent binding precedent, *Hollis v. United States*, 958 F.3d 1120 (11th Cir. 2020). In *Hollis*, the Eleventh Circuit examined the Alabama trafficking statute, which provided that "a person commits the crime of unlawful

distribution of a controlled substance if he sells, furnishes, gives away, delivers, or distributes a controlled substance." *Id.* at 1123. Although the statute was not a precise match to the Guidelines definition of "controlled substance offense," the Eleventh Circuit still held that the Alabama trafficking offense is a controlled substance offense under U.S.S.G. § 4B1.2 because "[f]or a state drug offense to qualify as a predicate offense under the career-offender guideline, the language of the statute need not match the Guidelines definition exactly." *Id.* Accordingly, the North Carolina cocaine trafficking statute need not match the Guidelines definition exactly to qualify as a controlled substance offense.

Garcia nonetheless argues that the North Carolina cocaine trafficking offense cannot qualify as a controlled substance offense because the relevant statute is substantially similar to the Florida cocaine trafficking statute. That argument is misplaced because the North Carolina and Florida cocaine trafficking statutes are dissimilar. The Florida cocaine trafficking statute "provides, in pertinent part: 'Any person who knowingly sells, *purchases*, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine, commits a felony of the first degree, which felony shall be known as 'trafficking in cocaine.'" *United States v. Shannon*, 631 F.3d 1187, 1189 (11th Cir. 2011). The statute prohibited the purchase of cocaine, and "[b]ecause the act of purchase is not included in § 4B1.2(b), [the defendant's] prior conviction is not a 'controlled substance offense.'" *Id. Shannon's* holding is inapplicable here because in contrast to the Florida statute, the North Carolina cocaine trafficking statute does not cover any "purchase" of cocaine.

Garcia otherwise does not show that N.C. Gen. Stat. § 90-95(h)(3) (2004) prohibits any conduct that the Guidelines definition does not cover. Given the North Carolina statute's substantial similarity to the Georgia trafficking statute and binding precedent, this Court should

find that the North Carolina cocaine trafficking offense categorically qualifies as a controlled substance offense.

### 2. This Court should infer an intent to distribute from the North Carolina cocaine trafficking statute.

Next, Garcia argues that the North Carolina cocaine trafficking statute does not require an "intent to manufacture, import, export, distribute, or dispense," which the Guidelines definition includes. Doc. 95 at 7-11. Again, this argument ignores relevant binding precedent as well as North Carolina case law. North Carolina state court decisions and Eleventh Circuit precedent show that this Court must infer an intent to distribute from N.C. Gen. Stat. § 90-95(h)(3) even though the statute does not explicitly mention the intent.

The North Carolina state courts have held that an intent to distribute is embodied in N.C. Gen. Stat. § 90-95(h)(3). In interpreting this statute, the Court of Appeals of North Carolina emphasized "the purpose behind G.S. 90–95(h)(3)(a) of deterring 'trafficking' in controlled substances." *Tyndall*, 284 S.E.2d at 577. By hinging the crime of trafficking on certain amounts of controlled substances, the court held the state "legislature has determined that certain amounts of controlled substances and certain amounts of mixtures containing controlled substances *indicate an intent to distribute on a large scale*." *Id.* (emphasis added). As the court further explained, "[l]arge scale distribution increases the number of people potentially harmed by use of drugs. The penalties for sales of such amounts, therefore, are harsher than those under G.S. 90–95(a)(1)."[1] *Id.* By defining possession of 28 grams or more of cocaine as trafficking, the North Carolina legislature "has determined that [that amount] *indicate[s] an intent to distribute on a large scale*." *Id.* (emphasis added).

---

[1] Subsection (a)(1) provides that it is unlawful for any person to "manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance"

Likewise, the Supreme Court of North Carolina examined the state heroin trafficking statute, which is substantially similar to N.C. Gen. Stat. § 90-95(h)(3), and reached the same conclusion. Without explicitly requiring an intent, the heroin trafficking statute, like the cocaine trafficking statute at issue here, provided that "[a]ny person who sells, manufactures, delivers, transports, or possesses four grams or more of . . . heroin, or any mixture containing such substance, shall be guilty of a felony which felony shall be known as 'trafficking in opium or heroin." N.C. Gen. Stat. § 90-95(h)(4). The Supreme Court of North Carolina held that because "[t]he purpose of the statute is to prevent trafficking in controlled substances," engaging in conduct prohibited under this statute "indicates an intent to distribute the controlled substance on a large scale. Large scale distribution naturally reaches more people who may be harmed by the drugs." *State v. Perry*, 340 S.E.2d 450, 459 (N.C.1986). These state court decisions squarely reject Garcia's argument that the North Carolina trafficking statutes do not allow the Court to infer an intent to distribute.

Those state court decisions are also consistent with the Eleventh Circuit's binding precedent that requires this Court to infer an intent to distribute from a state trafficking statute even when the statute is silent on the intent. Like the North Carolina drug trafficking statute, the Georgia General Assembly "select[ed] 28 grams as the dividing line between possession/possession with intent to distribute versus trafficking" by classifying possession of 28 grams or more of a controlled substance as trafficking. *Madera-Madera*, 333 F.3d at 1232; *see* N.C. Gen. Stat. §§ 90-95(a)(1), (a)(3), and (h). The Eleventh Circuit concluded that "[i]n making possession of 28 grams of methamphetamine a 'trafficking' offense, Georgia's trafficking statute necessarily infers an intent to distribute once a defendant possesses a certain amount of drugs." *Id.* This holding, together

with the North Carolina case law, show that this Court must infer an intent from the North Carolina cocaine trafficking statute that punishes possessing 28 grams or more of cocaine as trafficking.

Garcia attempts to circumvent this conclusion by relying on decisions that are inapplicable here. Notably, Garcia discusses a circuit split between the Eleventh Circuit and other circuits, including the Fourth Circuit, which have refused to infer an intent to distribute from a state drug trafficking statute that is silent on the intent. Doc. 95 at 14-15. But recognizing the split, the Eleventh Circuit has squarely rejected this argument in *United States v. White*, 837 F.3d 1225 (11th Cir. 2016). The Eleventh Circuit noted that in *United States v. Brandon*, 247 F.3d 186 (4th Cir. 2001), a case cited by Garcia, the Fourth Circuit "disagreed [with the Eleventh Circuit] that possession of 28 grams of cocaine was sufficient to give rise to that inference." *White*, 837 F.3d at 1234. Choosing not to infer an intent from a drug amount, "*Brandon* concluded that the 28-gram threshold required for a conviction under the North Carolina trafficking statute . . . was simply too low a quantity of drugs to warrant an inference of the defendant's intent to distribute." *Id.* The Eleventh Circuit further discussed "decisions from the Fifth, Sixth, Ninth, and Tenth Circuits in which those courts refused to infer intent to distribute in the context of determining whether a state trafficking-by-possession conviction qualified as a 'drug trafficking offense' under § 2L1.2 or a 'controlled substance offense' under § 4B1.1 of the guidelines." *Id.*

The Eleventh Circuit nonetheless decided not to follow those decisions because "it is bound under the prior precedent rule to follow our decision . . . unless and until it is abrogated by an en banc decision or by a Supreme Court decision," which did not occur. *Id.* at 1235. Likewise, this Court is bound by *Madera-Madera*, which requires it to infer an intent to distribute from the North Carolina cocaine trafficking statute, because the North Carolina drug trafficking statute "is not materially distinguishable from Georgia's." *James,* 430 F.3d at 1155; *United States v.*

*Landaverde-Cruz*, 629 F. App'x 854, 856 (11th Cir. 2015) (Applying *Madera-Madera* to the consideration of Alabama's drug trafficking statute).

3. **The federal statute's definition of "controlled substance" is inapplicable here**.

Lastly, Garcia argues that the North Carolina cocaine trafficking offense does not match the Guidelines definition because the definition of cocaine under the state statute is broader than the federal statute.  Doc. 95 at 11-14.  In making this argument, Garcia refers to the definition of cocaine under the Controlled Substance Act.  This argument is squarely foreclosed by binding precedent.

In *United States v. Smith*, 775 F.3d 1262, 1267 (11th Cir. 2014), the Eleventh Circuit "rejected the argument that [a state drug statute's] definition of a controlled substance was too broad and must be tied to statutory federal analogues or generic federal definitions." *United States v. Roper*, No. 20-10159, —F. App'x—, 2021 WL 236578, at *3 (11th Cir. Jan. 25, 2021).   The Court "declined to look to statutory federal analogues in considering [a state drug statute] because [it] found that the sentencing guidelines did not define 'controlled substance offense' by reference to those analogues and the sentencing guidelines definition was unambiguous." *United States v. Pridgeon*, 853 F.3d 1192, 1198 (11th Cir. 2017); *see United States v. Ward*, 972 F.3d 364, 372 (4th Cir. 2020) (rejecting the defendant's "argument that [the Court] must look to the federal Controlled Substances Act's definition—a reference that is notably absent from this Guidelines provision"); *United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020), *cert. denied*, No. 20-5975, 2021 WL 161056 (U.S. Jan. 19, 2021) ("We see no textual basis to engraft the federal Controlled Substances Act's definition of 'controlled substance' into the career-offender guideline."). Instead, the Eleventh Circuit will "look to the plain language of the definitions" because it

"presume[s] that Congress and the Sentencing Commission said what they meant and meant what they said." *Smith*, 775 F.3d at 1267.

*Smith* and *Pridgeon* squarely reject Garcia's argument and require that this Court not refer to other federal statutory schemes in defining "controlled substance" in the Guidelines. Instead, "[t]he language in the sentencing guidelines is to be given its plain and ordinary meaning." *United States v. Philidor*, 717 F.3d 883, 886 (11th Cir. 2013). "A controlled substance is generally understood to be any of a category of behavior-altering or addictive drugs, as heroin or cocaine, whose possession and use are restricted by law." *Ruth*, 966 F.3d at 654. "Given the natural meaning of a controlled substance," the North Carolina's definition of cocaine fits the Guidelines definition of "controlled substance." *Id.*

### Conclusion

The United States therefore respectfully requests that the Court overrule Victor Garcia's PSR objection and designate him as a career offender under U.S.S.G. § 4B1.1.

Respectfully submitted, this 12th day of February, 2021.

PETER D. LEARY
ACTING UNITED STATES ATTORNEY
MIDDLE DISTRICT OF GEORGIA

BY:     *s/ Huiju Jeon*
        Huiju Jeon
        Assistant United States Attorney
        New York Bar No. 5447792
        United States Attorney's Office
        Middle District of Georgia
        P.O. Box 1702
        Macon, Georgia 31202
        Telephone: (478) 752-3511
        E-mail: Huiju.Jeon@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the **United States' Response in Opposition to Victor Garcia's Supplemental Brief** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of filing to counsel of record for Defendant.

This the 12th day of February, 2021.

PETER D. LEARY
ACTING UNITED STATES ATTORNEY
MIDDLE DISTRICT OF GEORGIA


BY:    <u>s/ Huiju Jeon</u>
Huiju Jeon
Assistant United States Attorney
New York Bar No. 5447792
United States Attorney's Office
Middle District of Georgia
P.O. Box 1702
Macon, Georgia 31202
Telephone: (478) 752-3511
E-mail: Huiju.Jeon@usdoj.gov